UNITED STATES v. McGEE et al.

(Circuit Court, W. D. Missouri, W. D. June 12, 1909.)

UNITED STATES (§ 101*)—CONTRACTS FOR PUBLIC WORKS—LIABILITY OF SURETY ON CONTRACTOR'S BOND.

A contract for government work provided that, in case of default by the contractors, the United States might annul the contract and complete the work at the expense of the contractors, or in lieu of such annulment might waive the time limit and extend the time for completion, and that in either case it should have the right to recover the additional cost to it of inspection and superintendence after the expiration of the time fixed by the contract for completion of the work. *Held* that, where the government first granted an extension of time to the contractors, and on their becoming bankrupt without completing the work annulled the contract and let the remaining work to another contractor, it was entitled to recover from the original contractors and the surety on their bond the cost of inspection and superintendence both during the extension and the time the work was being completed by the new contractor.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 101.*]

A. S. Van Valkenburgh, U. S. Dist. Atty.

Lowe & Shannon, for defendants.

PHILIPS, District Judge. This is a suit based upon the bond executed by the defendants, McGee and Short, with the Title Guaranty & Trust Company as surety, to the United States for the performance of a contract between the plaintiff and said McGee and Short, as contractors, for the construction of a concrete wall with foundations for bear-trap sluice at Colbert Shoals, Tennessee river.

The fourth paragraph of said contract provided, in substance, that if said contractors should fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of

the contract, the United States would have power, with the sanction of the chief of engineers, to annul the contract by giving notice, etc.; and upon the giving of such notice all payments to the contractors should cease, and all money or reserved percentage due or to become due to them under the contract should be retained by the government until the final completion and acceptance of the work; "and the United States shall have the right to recover from the parties of the second part [the contractors] whatever sums may be expended by the party of the first part [the United States] in completing the said contract in excess of the price herein stipulated to be paid the parties of the second part for completing the same, and also all costs of inspection and superintendence incurred by the said United States, in excess of those payable by the said United States during the period herein allowed for the completion of the contract by the parties of the second part; and the party of the first part may deduct all the above-mentioned sums out of or from the money or reserved percentage retained as aforesaid; and upon the giving of the said notice the party of the first part shall be authorized to proceed to secure the performance of the work or delivery of the materials, by contract or otherwise in accordance with law."

The fifth paragraph of the contract provided that, in lieu of annulling the contract under the preceding paragraph, the government might waive the time limit and permit the contractors to finish the work within a reasonable period, to be determined by the said party of the first part, and that, should the original time limit be waived, all expenses for inspection and superintendence, and all other losses and damages due for the delay beyond the time originally set for the completion, shall be determined by the party of the first part and deducted as aforesaid, with the proviso that the government, with the sanction of the chief of engineers, may remit the charges and expenses of inspection and superintendence for so much of the time as resulted from specified incidents.

The time fixed by the contract for the completion thereof was December 31, 1906. There was an extension granted until some time in 1907 in which to complete the work. The contractors having failed to complete the work within such extension, and having become insolvent and bankrupt, the government, as provided for in the contract, proceeded to relet the contract to W. W. Harts, to complete the unfinished part of the work at an increased expense over the cost under the original contract. This suit is to recover on the bond given by McGee and Short, with the Title Guaranty & Trust Company as surety, for the recovery of this expenditure by the government.

It is conceded that under the evidence this excessive cost of construction amounted to $7,469.90. The controversy, in its last result upon the hearing, is narrowed down to the additional item of $1,159.10, charged by the government as costs for inspection and superintendence of the work under the new contractor. The contention on the part of the guaranty company is that this claim is not within the terms of the undertaking of the surety. After appropri-

ately referring to the contract in question, the condition of the bond is as follows:

"Now, therefore, if the above-bounden McGee & Co., their heirs, executors, or administrators, shall and will, in all respects, duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by the said contract agreed and covenanted by said McGee & Co., to be observed and performed according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, and shall promptly make full payments to all persons supplying them labor or materials in the prosecution of the work provided for in said contract, then the above obligation shall be void and of no effect; otherwise, to remain in full force and virtue."

As already indicated by the fourth paragraph of the contract, on annulment thereof by the government as provided for failure to perform, the government was expressly authorized to recover from the contractors not only whatever sums it expended in the completion of the contract in excess of the price stipulated, but also all costs of inspection and superintendence incurred in excess of those payable by the United States during the period allowed for the completion of the contract.

The fifth paragraph provided that if the contract was not completed within the prescribed period, in lieu of annulling it, the time limit might be waived, and the contractors permitted to finish the work within a reasonable period; and it further provided that, "should the original time limit be thus waived, all expenses for inspection and superintendence, and all other actual losses and damages to the United States due to the delay beyond the time originally set for the completion, shall be determined by the party of the first part and deducted from any payments to become due to the party of the second part."

Unquestionably, under the latter provision, the contractors were liable for the expenses of inspection and superintendence during the period of extension from December 31, 1906, to July, 1907. The question to be decided therefore is narrowed down to whether or not, after the first failure to complete the contract within the period prescribed in the first instance, and the government elected in lieu of then declaring the contract at an end to extend the time for its completion to another fixed date, it could, as the evidence shows it did do, declare the contract annulled, and then charge the contractors also for the cost of inspection and superintendence under the relet contract.

While the fifth paragraph gave to the government the alternative, in case of default, of not declaring the contract annulled, the right in lieu thereof to grant an extension of time, it also expressly made the contractors liable for the costs of inspection and superintendence incurred during such extended period. Most certainly it was not expressed or implied that if the contractors should likewise fail to complete the work within the extended time, and should become bankrupt and abandon the undertaking, the right expressed in the fourth paragraph of the contract to annul and relet the contract would be lost to the government. This right would seem necessarily to reattach upon default under the extension agreement. This the learn-

ed counsel for the defendant concedes, as he makes no contention as to the difference in cost of the work done by the succeeding contractor. The corollary of this concession inevitably is the corresponding liability for the costs of inspection and superintendence incurred by the government during the period allowed for the completion of the contract. The two liabilities are coincident, being allied parts of the same section. In other words, as I read the two paragraphs of the contract, while it was not contemplated that the government should exact of the first contractors such costs during the period of performance prescribed in the original contract, it was expressly provided that, in case of extension of the period, the contractor should pay such costs; and if the contract should at any time be annulled by reason of the ultimate default of the contractor, and the work should be relet to another, a like liability would attach to the first contractor for the costs of inspecting and superintending the completion thereof.

It results that judgment must go for the plaintiff as prayed for in the petition.